**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

ERIC HARDING,

                      **Plaintiff,**

  vs.                                                  9:13-CV-1162
                                                            (MAD/CFH)

**DONLAD VENETTOZZI, Acting Director of SHU;
RANDY LAMORA, Hearing Officer**

                      **Defendants.**
_____

**APPEARANCES:**                            **OF COUNSEL:**

**ERIC HARDING
08-A-3546**
Auburn Correctional Facility
Post Office Box 618
Auburn, New York 13021
Plaintiff *pro se*

**OFFICE OF THE NEW YORK**        **JOSHUA L. FARRELL, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Plaintiff *pro se* Eric Harding (hereinafter "Plaintiff"), an inmate currently in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that Defendants Donald Venettozzi and Lieutenant Randy LaMora violated his rights under the Fourteenth Amendment. *See generally* Dkt. No. 1. Presently pending is Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Dkt. No. 23-3. On November 20, 2014, Magistrate

Judge Hummel submitted a Report-Recommendation and Order recommending that the Court grant Defendants' motion for summary judgment. *See* Dkt. No. 35.

Currently before the Court are Plaintiff's objections to Magistrate Judge Hummel's Report-Recommendation and Order. *See* Dkt. No. 38.

**II. BACKGROUND**

A.  **Factual Background**

For a complete recitation of the factual background, refer to Magistrate Judge Hummel's Report-Recommendation and Order. *See* Dkt. No. 35 at 2-6.

B.  **Magistrate Judge Hummel's November 20, 2014 Report-Recommendation and Order**

In his November 20, 2014 Report-Recommendation and Order, Magistrate Judge Hummel recommended that the Court grant Defendants' motion for summary judgment. *See id.* Magistrate Judge Hummel determined that, as to Plaintiff's procedural due process claim, Plaintiff had established a protected liberty interest, because the 365 day sentence in Special Housing Unit ("SHU") was far higher than a sentence of intermediate duration. *Id.* at 10. Magistrate Judge Hummel then found that Plaintiff received proper written notice in advance of the Tier III disciplinary hearing. *Id.* at 11. Next, Magistrate Judge Hummel recommended that the Court grant Defendants' motion in regard to the denial of witnesses, because Defendant LaMora "detailed his reasons for rejecting the nurse to testify at the hearing itself, and explained why the five inmates did not testify in Lamora's affidavit supplied in response to the instant suit." *Id.* at 13. Magistrate Judge Hummel then found that Defendant LaMora acted as a fair and impartial hearing officer despite Plaintiff's claims to the contrary. *Id.* at 17. Plaintiff relied on a single

2

statement made by Defendant LaMora during the hearing, where he "articulated his point of view[,]" to prove that Defendant LaMora was not fair and impartial. *Id.* at 15. Further, the Report-Recommendation and Order found that Defendant LaMora had reliable evidence of Plaintiff's guilt, and that Plaintiff had given inconsistent testimony of his version of the facts in the past. *Id.* at 15-16. Finally, Magistrate Judge Hummel found that Plaintiff received a written statement of the hearing disposition, the final procedural due process requirement in this situation. *Id.* at 17.

Magistrate Judge Hummel also recommended that the Court grant Defendants' motion for summary judgment based on qualified immunity, because Plaintiff failed to established that Defendants violated his Fourteenth Amendment rights. *Id.* at 18.

### C. **Plaintiff's objections**

Plaintiff raises three objections to the Report-Recommendation and Order. *See* Dkt. No. 38.

First, Plaintiff argues that denial of his requested witnesses was a violation of procedural due process, because 7 N.Y.C.R.R. § 254.5 (2015) allows witnesses to have their testimony recorded outside the presence of the inmate. Dkt. No. 38 at 10. He then cites an opinion from the Tenth Circuit, *Ramer v. Kirby*, 936 F.2d 1102 (10th Cir. 1991), that held a refusal to call witnesses is a denial of due process, and is an especially important right when it is an inmate's word against the word of a prison guard. *Id.* at 11. Finally, Plaintiff cites an Eighth Circuit case, *Graham v. Baughman*, 772 F.2d 441 (8th Cir. 1985), for the proposition that a prisoner is denied due process when a hearing officer refuses to hear testimony that corroborates the witness' own story. *Id.* at 9.

Second, Plaintiff again objects to the recommended dismissal of Defendant LaMora, who Plaintiff claims was not an impartial and fair hearing officer due to statements made by Defendant LaMora during the hearing. *Id.* at 12. Plaintiff cites *Patterson v. Coughlin*, 905 F.2d 564 (2d Cir. 1990), as an example of how a hearing officer may violate procedural due process rights by acting in a manner that is not fair and impartial. *Id.* at 13.

Third, Plaintiff objects to the recommendation finding that Defendants are entitled to qualified immunity. *Id.* at 16. Plaintiff claims that Defendant Venettozzi reversed and expunged Plaintiff's disciplinary hearing decision due to failure to submit an opposition brief in his Article 78 proceeding, after he had already served his SHU sentence. *Id.* at 16. Plaintiff also claims that Defendant Venetozzi's failure to reverse the disciplinary decision when he was first made aware of the result negates a qualified immunity defense. *Id.* at 17.

## III. DISCUSSION

**A.    Standard of review**

### *1. Review of a report-recommendation and order*

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1) (2006). When a party, however, files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by

the magistrate judge." 28 U.S.C. § 636(b)(1) (2006).

A litigant's failure to file objections to a magistrate judge's report-recommendation, even when that litigant is proceeding *pro se*, waives any challenge to the report on appeal. *See Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (holding that, "[a]s a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point" (citation omitted)). A *pro se* litigant must be given notice of this rule; notice is sufficient if it informs the litigant that the failure to timely object will result in the waiver of further judicial review and cites pertinent statutory and civil rules authority. *See Frank v. Johnson*, 968 F.2d 298, 299 (2d Cir. 1992); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (holding that a *pro se* party's failure to object to a report and recommendation does not waive his right to appellate review unless the report explicitly states that failure to object will preclude appellate review and specifically cites 28 U.S.C. § 636(b)(1) and Rules 72, 6(a) and former 6(e) of the Federal Rules of Civil Procedure).

### *2. Summary judgment standard*

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c) (e)).

5

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2502, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

### *3. 42 U.S.C. § 1983*

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws." *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976) (quoting 42 U.S.C. § 1983). Not only must the conduct deprive the plaintiff of rights and privileges secured by the Constitution, but the actions or omissions attributable to each defendant must be the proximate cause of the injuries and consequent damages that the plaintiff sustained. *See Brown v. Coughlin*, 758 F. Supp. 876, 881 (S.D.N.Y. 1991) (citing *Martinez v. California*, 444 U.S. 277, 100 S. Ct. 553, 62 L. Ed. 2d 481, *reh. denied*, 445 U.S. 920, 100 S. Ct. 1285, 63 L. Ed. 2d 606 (1980)). As such, for a plaintiff to recover in a section 1983 action, he must establish a causal connection between the acts or omissions of each defendant and any injury or damages he suffered as a result of those acts or omissions. *See id.* (citing *Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 99 S. Ct. 693, 58 L.

6

Ed. 2d 619 (1979)) (other citation omitted).

B.     **Fourteenth Amendment due process claim**

The Due Process Clause of the Fourteenth Amendment states that "[n]o State shall . . . deprive any person of life, liberty, or property without due process of law."  U.S. CONST. amend. XIV § 1.  It is important to emphasize that due process "does not protect against all deprivations of liberty.  It protects only against deprivations of liberty accomplished without due process of the law."  *Baker v. McCollan*, 443 U.S. 137, 145 (1979) (internal quotation and citations omitted). "A liberty interest may arise from the Constitution itself, . . . or it may arise from an expectation or interest created by state laws or policies."  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted).  An inmate retains a protected liberty interest in remaining free from segregated confinement if the prisoner can satisfy the standard set forth in *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).

"To formulate a claim under the Due Process Clause of the Fourteenth Amendment, a plaintiff must demonstrate that he or she possesses a constitutionally protected interest in life, liberty, or property, and that state action has deprived him or her of that interest."  *Valmonte v. Bane*, 18 F.3d 992, 998 (2d Cir. 1994) (citation omitted).  "The Supreme Court has established that '[w]e examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Id.* (quoting *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 460,

109 S. Ct. 1904, 1908, 104 L. Ed. 2d 506 (1989)).[1]

The due process protections afforded a prison inmate do not equate to "'the full panoply of rights' due to a defendant in a criminal prosecution." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (quotation omitted). "Nevertheless, an inmate is entitled to advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." *Id.* (citing *Wolff v. McDonnell*, 418 U.S. 556, 563-67 (1974)).

"Since *Wolff*, the Supreme Court has clarified that judicial review of the written findings required by due process is limited to determining whether the disposition is supported by 'some evidence.'" *Id.* (quoting *Superintendent v. Hill*, 472 U.S. 445, 455, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985)). "This standard is extremely tolerant and is satisfied if 'there is any evidence in the record that supports' the disciplinary ruling." *Id.* (quoting *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000)). Nevertheless, as the Second Circuit has explained, "the 'some evidence' standard requires some 'reliable evidence.'" *Id.* (quotation and other citation omitted).

The some evidence standard, detailed in *Superintendent v. Hill*, 472 U.S. 445 (1985), is satisfied if "'there is any evidence in the record that supports' the disciplinary ruling." *Sira*, 380 F.3d at 69 (quoting *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000)). "[P]rison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances." *Hill*, 472 U.S. at 456 (requiring only a "modicum of evidence" to support

---

[1] The Court notes that Plaintiff was sentenced to 365 days in SHU after the Tier III disciplinary hearing, which is sufficient to establish that he suffered from an atypical and significant confinement. *See Colon v. Howard*, 215 F.3d 227, 231-32 (2d Cir. 2000). As such, there is no dispute that Plaintiff has established a protected liberty interest. *See id.*

8

a hearing decision).

### *1. Denial of Witnesses*

Plaintiff claims that Defendant LaMora should have allowed inmate Swimley to testify using an "In-Camra hearing[] to protect the interest[s] of the government and the defendant." Dkt. No. 38 at 10. However, the relevant regulation only provides that "such a witness *may* be interviewed out of the presence of the inmate and such interview tape recorded." 7 N.Y.C.R.R. § 254.5(b) (2015) (emphasis added). Defendant LaMora had no duty to interview Plaintiff's witness simply because the regulation gave him discretion to use this alternate interview method. Further, the fact that a witness may provide recorded testimony does not negate the officer's ability to refuse to allow the witness' testimony if it "will jeopardize institutional safety or correctional goals." *Id.* Since Defendant LaMora explained why he refused to allow the witnesses to testify, as set out in Magistrate Judge Hummel's Report-Recommendation and Order, denial of this witness interview was not a violation of procedural due process. Dkt. No. 35 at 13.

Plaintiff also objected to Defendant LaMora's refusal to call witnesses, because a prisoner must be given "the opportunity 'to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals.'" *Ramer v. Kirby*, 936 F.2d 1102, 1104 (10th Cir. 1991) (citation omitted). In *Ramer*, the court held that requiring inmates to submit written questions for prison staff witnesses was not a denial of procedural due process, but "[a] refusal to permit a staff member to testify based solely on a blanket policy excluding the testimony of a certain class of individuals does not satisfy the requirement of the individualized determination established by the supreme Court in *Wolff*." *Id.* at 1105. However, as the Report-Recommendation and Order made clear, Defendant

9

LaMora gave individualized reasons for denying the witnesses Plaintiff requested, unlike the blanket exclusion policy referenced by the Tenth Circuit in *Ramer*. Dkt. No. 35 at 13.

Finally, Plaintiff claims that denying a witness that will corroborate the inmate's story is a denial of procedural due process. Dkt. No. 38 at 11. Plaintiff relies on *Graham v. Baughman*, in which the hearing officers denied the plaintiff's request for witnesses because "such testimony was irrelevant and unnecessary because it was 'merely corroborative' of Graham's story." *Graham v. Baughman*, 772 F.2d 441, 445 (8th Cir. 1985). Plaintiff's reliance on *Graham* is misplaced. Unlike *Graham* where the sole reason the plaintiff's testimony was denied was the corroborative nature of the stories, Defendant LaMora denied available witnesses for proper reasons. Defendant Lamora found that permitting inmate Swimley's testimony would have created a risk to Defendant "LaMora's safety if the hearing were to become confrontational." Dkt. No. 35 at 13. Moreover, Defendant "LaMora believed any statements made by Martin would be false on the basis that testifying truthfully would incriminate himself[,]" and that inmates Martin and Swimley would be subject to retaliation if their testimony adversely impacted Plaintiff. Finally, Defendant LaMora found that "Harding's request for the nurse to appear as a witness for him would have been irrelevant to the case . . . ." *Id.* None of these witnesses were precluded simply because they would have corroborated Plaintiff's claim.

Based on the foregoing, the Court finds that Magistrate Judge Hummel correctly determined that Defendants' motion for summary judgment as to this claim should be granted.

### *2. Impartial Hearing Officer*

Plaintiff claims that Defendant LaMora predetermined his guilt. Dkt. No. 38 at 12. He relies on a Second Circuit decision from 1990 where the court found a constitutional violation

when the defendant hearing officer refused to allow the plaintiff inmate to call witnesses at the inmate's hearing. *Id.* at 12 (citing *Patterson v. Coughlin*, 905 F.2d 564, 567 (2d Cir. 1990)). In *Patterson*, the hearing officer refused to permit the plaintiff's witnesses to testify at the hearing on the ground that he would not have believed their testimony. The court found that this violated the plaintiff's due process rights because an impartial decision maker "cannot say . . . how he would assess evidence he has not yet seen." *Id*. at 569-70. However, in the case before us, as set out in Magistrate Judge Hummel's Report-Recommendation and Order, Defendant LaMora's statements during the hearing did not show bias which rose to the level of a violation of procedural due process. Dkt. No. 35 at 17. Plaintiff references a single statement made by Defendant LaMora during the hearing, where Defendant LaMora "articulated his point of view." Dkt. No. 35 at 15. Magistrate Judge Hummel's Report-Recommendation and Order makes clear that Defendant LaMora's "personal reiteration of the facts" cannot objectively be perceived as biased. *Id.* Further, Defendant LaMora gave Plaintiff the option to "state all his objections for the record, . . . the opportunity to retrieve an object from his cell[,] . . . and [the opportunity to] state a defense against his charges." *Id.* Defendant LaMora's conduct is not similar to that of the hearing officer in *Patterson*, because Defendant LaMora gave Plaintiff every opportunity to plead his case at the hearing, and did not speak or act in a way that showed he had already predetermined Plaintiff's guilt.

Based on the foregoing, the Court finds that Magistrate Judge Hummel correctly determined that Defendants' motion on this ground should be granted.

**C.     Qualified Immunity**

Finally, Plaintiff objects to the Report-Recommendation and Order insofar as it

recommends granting Defendants' motion for summary judgment on qualified immunity grounds. Dkt. No. 38 at 16.

Qualified immunity protects government officials from liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted); *see also Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (holding that qualified immunity is not merely immunity from damages but also "immunity from suit"). "[T]he salient question [in determining qualified immunity] is whether the state of the law . . . gave [the defendants] fair warning that their alleged treatment of [the plaintiff] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). As qualified immunity is an affirmative defense, the burden of pleading it falls on the defendants. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (citations omitted); *see also Varrone v. Bilotti*, 123 F.3d 75, 78 (2d Cir. 1997) (holding that the "defendants bear the burden of showing that the challenged act was objectively reasonable" (citation omitted)).

The qualified immunity determination consists of two steps, which a court may consider in either order. *See Seri v. Bochicchio*, 374 Fed. Appx. 114, 116 (2d Cir. 2010) (citation omitted). The first step is to determine "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citations omitted). The second is a determination of "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* (citation omitted).

A right is "clearly established" if "[t]he contours of the right . . . [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "To determine whether a right is clearly established, we look to: (1) whether the right was defined with reasonable specificity; (2) whether Supreme Court

12

or court of appeals case law supports the existence of the right in question; and (3) whether under preexisting law a reasonable defendant would have understood that his or her acts were unlawful." *Scott v. Fischer*, 616 F.3d 100, 105 (2d Cir. 2010) (citing *Schecter v. Comptroller of City of N.Y.*, 79 F.3d 265, 271 (2d Cir. 1996)).  "As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

If there is no dispute as to any material fact, the issue of whether the official's conduct was objectively reasonable is an issue of law to be decided by the court. *See id.* at 368 (citation omitted).  Any unresolved factual issues, however, must be resolved by the jury. *See id.* (quoting *Kerman*, 374 F.3d at 109) (other citations omitted).  Once the court has received the jury's decision as to "what the facts were that the officer faced or perceived," the court must then "make the ultimate legal determination of whether qualified immunity attaches on those facts." *Stephenson v. Doe*, 332 F.3d 68, 81 (2d Cir. 2003) (quotation omitted); *see also Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir. 1995) (quotation omitted).

Plaintiff's first objection, that the reversal hinged on Defendants' failure to submit an opposition brief, has no basis in evidence.  Dkt. No. 38 at 16.  In Defendant LaMora's Declaration, he states that the reversal was "presumably because [he] did not give the inmate a written statement stating the reasons denying him his requested witnesses, as required . . . ." Dkt. No. 23-6 at 2.  Defendant LaMora's explanation is the more likely cause of the reversal, because "[i]f permission to call a witness is denied, the hearing officer shall give the inmate a written statement stating the reasons for the denial," and Defendant LaMora admits that he may have forgotten to provide written statements explaining the refusal of requested witnesses.  7 N.Y.C.R.R. § 253.5(a) (2015); Dkt. No. 23-6 at 2.  Even if the Court were to consider Plaintiff's

13

contention, the result is the same. The State's failure to oppose Plaintiff in the Article 78 proceeding does not suggest that Defendant LaMora was a biased hearing officer.

Plaintiff's second objection, that Defendant Venetozzi failed to reverse the disciplinary charge when he was made aware of the situation, does not negate a grant of qualified immunity. A reasonable official would not have believed that he was violating Plaintiff's clearly established rights when he upheld a well-supported disciplinary determination, even if the hearing officer failed to comply with a procedural regulation that had no impact on the merits of the officer's decision. *See Maraziti v. First Interstate Bank of California*, 953 F.2d 520, 525 (9th Cir. 1992) (holding that officials sued for constitutional violations "'do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision'") (quoting *Davis*, 468 U.S. at 194, 104 S. Ct. at 3019); *Popham v. City of Talladega*, 742 F. Supp. 1504, 1511-12 (N.D. Ala. 1989) (holding that a prison official's failure to comply with a state regulation does not deprive the official of the qualified immunity defense) (citations omitted).

As the evidence clearly demonstrates, Defendant LaMora relied on credible evidence presented at the hearing in finding Plaintiff guilty of the charged violations, which Magistrate Judge Hummel thoroughly discussed in his Report-Recommendation and Order. *See* Dkt. No. 35 at 3-6. Considering the overwhelming evidence suggesting Plaintiff's guilt as to the charged rule violations, no objectively reasonable official would believe that he was violating a clearly established right in refusing to permit Plaintiff to call additional witnesses or in upholding the decision on administrative appeal.

Based on the foregoing, the Court finds that Magistrate Judge Hummel correctly determined that Defendants are entitled to qualified immunity.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, Magistrate Judge Hummel's Report-Recommendation and Order and the applicable law, the Court hereby

**ORDERS** that Magistrate Judge Hummel's November 20, 2014 Report-Recommendation and Order is **ADOPTED in its entirety** for the reasons stated herein; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: January 26, 2015
      Albany, New York

_Mae A. D'Agostino_
U.S. District Judge